UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVSIION

| | |
|---|---|
| DANIEL STARCHER, | CASE NO. 5:16-cv-2222 |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE THOMAS M. PARKER |
| Defendant. | **REPORT AND RECOMMENDATION** |

**I.    Introduction**

Plaintiff, Daniel Starcher ("Plaintiff"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits under Titles II of the Social Security Act ("Act").  This matter is before the court pursuant to 42 U.S.C. §405(g), 42 U.S.C. §1383(c)(3) and Local Rule 72.2(b).

Because I find the ALJ's decision was not supported by substantial evidence, I recommend that the final decision of the Commissioner be VACATED and the case be REMANDED for further proceedings.

**II.    Procedural History**

Plaintiff protectively filed for a period of disability insurance benefits with an alleged onset date of January 3, 2013.[1] (Tr. 11)  The claim was denied initially (Tr. 48-56) and on

---

[1] Plaintiff initially claimed that he became disabled in January 2013.  However, at the administrative hearing, plaintiff amended his onset date to May 16, 2014. (Tr. 31, 114)

1

reconsideration. (Tr. 57-66) Plaintiff filed a written request for a hearing on March 11, 2014. (Tr. 80)

Administrative Law Judge ("ALJ") Charles Shinn heard the case on August 24, 2015. (Tr. 25-47) The ALJ issued a decision on September 4, 2015, finding that plaintiff was not disabled. (Tr. 11-18) Plaintiff requested review of the hearing decision on September 29, 2015. (Tr. 7) On July 26, 2016, the Appeals Council denied review, rendering the ALJ's September 4, 2015 decision final. (Tr. 1-3) Plaintiff instituted this action to challenge the Commissioner's final decision.

### III. Evidence

#### A. Personal, Educational and Vocational Evidence

Mr. Starcher was born on May 17, 1964 and was 51 years old at the time of the hearing. (Tr. 33) He lived with his wife and five grandchildren. (Tr. 34) Mr. Starcher did not complete high school. (Tr. 33) He previously worked at Akron Plating but was no longer able to work there due to the exertional level. (Tr. 40, 43) Starcher attempted to work as a roofer for three months in 2013, but quit because he was unable to perform the requirements of the job. (Tr. 40-41)

#### B. Medical Evidence

Plaintiff suffered a work injury in November 1999 when working as a tree trimmer, suffering a fracture to the distal vertebra and concussion, with a brief coma. (Tr. 247) In 2002, he underwent a fusion at T7-T9. (Tr. 247) He then completed vocational rehabilitation and returned to full time employment. (Tr. 275)

Plaintiff received treatment for pain at Summit Pain Specialists, Inc. between October 2012 and May 2014. (Tr. 203-207, 209-211, 213-215, 217-219, 236-317) At the beginning of

his treatment, plaintiff was working full time and was relatively active. Plaintiff initially complained of lumbar pain and throbbing leg pain. He reported difficulty ambulating from sitting to standing. (Tr. 200) Despite these complaints, Dr. Guan Yang noted that plaintiff was ambulating without difficulty. (Tr. 201)

Plaintiff lost his job sometime before his February 2013 appointment with Summit Pain Specialists. (Tr. 214) In February 2013, Dr. Yang referred plaintiff to vocational rehabilitation to condition him to get back to work. (Tr. 215) Dr. Yang noted that plaintiff was "very motivated and would like to work at this time, however needs conditioned [*sic*] in order to do so." (Tr. 215) In June 2013, plaintiff helped his brother put up roofs, "but not often." (Tr. 206) In August 2013, plaintiff reported applying for a tree climbing position. (Tr. 203) Throughout 2013, plaintiff reported pain levels between 6-8 out of 10. The April 2013 notes from Summit Pain Specialists state that plaintiff was very active, mowing his own yard and doing chores. (Tr. 210)

In October 2013, plaintiff reported helping out with his grandchildren, but otherwise not being very active. (Tr. 200) He reported difficulty finding a job due to his "high risk/liability with his low back condition." (Tr. 200) Notes from Summit Pain Specialists repeatedly document that the medication regimen prescribed by Dr. Yang and the Summit Pain Specialists was helping plaintiff with the ability to do daily activities and chores. However, plaintiff was experiencing recurrent short episodes of moderate to severe breakthrough pain. (Tr. 204, 207, 211)

By December 2013, notes from office visits indicate that plaintiff's pain was preventing activity. (Tr. 234) Plaintiff reported sharp pain in his back. He also reported that he was applying for disability and that a functional capacity exam would be ordered. (Tr. 235) Also in

3

December 2013, a drug test ordered by Summit Pain Specialists returned positive results for the medications prescribed by Summit Pain Specialists as well ass for amphetamines and marijuana, which were not prescribed. (Tr. 229-231)

In January 2014, plaintiff reported sharp low back pain radiating down his right leg to his ankle. (Tr. 322) Plaintiff rated his pain as a 6 out of 10. (Tr. 321) Dr. Yang noted that plaintiff was positive for radicular pain from S1 on the right. (Tr. 323) However, notes continued to show that plaintiff ambulated without difficulty, was not in acute pain, had no pain on palpation or spasms or tightness, and had normal range of motion. (Tr. 323) Dr. Yang refilled plaintiff's prescription for Oxycodone. (Tr. 323)

In March 2014, plaintiff's condition was relatively unchanged. (Tr. 328-330) Plaintiff continued to complain of constant, deep, moderately intense pain across his mid-back. The office notes continue to contain the same paragraph indicating that plaintiff was ambulating without difficulty and was not in acute pain. (Tr. 330) However, in these office notes Dr. Yang documented radicular pain following T7, T8, T9. (Tr. 330) Dr. Yang ordered an epidural injection and refilled plaintiff's prescription for Percocet (Tr. 330)

Plaintiff's last appointment with Dr. Yang occurred on May 21, 2014. (Tr. 341) At this appointment, plaintiff complained that the current pain treatment plan was not appropriately controlling his pain. He reported continued moderately intense burning pain in his mid-back that was "often prohibitive." (Tr. 340) Nonetheless, the treatment notes continue to state that plaintiff was "not in acute pain" and "ambulated without difficulty." However, examination of plaintiff's thoracic spine revealed radicular pain and pain on palpation of his mid-back. (Tr. 340-341)

### C. Opinion Evidence

#### 1. Consultative Examiner – Kristin Cola, D.O., August 2015

Kristin Cola, D.O. performed a consultative exam of plaintiff on August 12, 2015. (Tr. 350-355) Plaintiff informed Dr. Cola that he used a cane and could only tolerate sitting for 30 minutes, standing for 10 minutes, walking one to two blocks, and lifting 10-20 pounds. (Tr. 344) Plaintiff was unable to touch his toes and had an antalgic gait, with paraspinal tenderness in the mid-thoracic area. (Tr. 344) Dr. Cola also found that positive straight leg raise, bilaterally, decreased sensation to light touch in the lateral lower leg area, bilaterally and positive Romberg sign. (Tr. 344) Dr. Cola opined that plaintiff was able to perform less than light duty. She stated:

> The claimant had mild weakness in bilateral lower extremities and he is clearly unstable on his feet and with his gait. He would be unable to perform anything that would require climbing a ladder or scaffolding or stairs. He is able to sit for very short periods of time. He is able to perform fine motor skills like typing or writing. He is able to read and write without difficulty. He is able to perform in extreme temperatures. But I feel that the amount of pain this gentleman is in, his history of back injury and his weakness and unsteadiness on his legs that he would have difficulty performing any manual labor or labor that required long hours. He is able to lift and carry less than 10 pounds. He has no difficulty with fine motor skills of his hands.

(Tr. 344-345)

#### 2. Reviewing Physician – Dr. Gary Hinzman – December 2013

On December 13, 2013, state agency reviewing physician Gary Hinzman, M.D., found that plaintiff could occasionally lift and/or carry up to 20 pounds; could frequently lift and/or carry up to 10 pounds; could stand and/or walk about 6 hours in an 8 hour workday; could frequently climb ramps/stairs; could not climb ladders/ropes/scaffolds; could frequently stoop and kneel; and was unlimited in his ability to balance, crouch and/or crawl. (Tr. 52-53)

5

### 3. Reviewing Physician – Dr. Michael Delphia – February 2014

On February 13, 2014, state agency reviewing psychologist, Michael Delphia, M.D., reviewed plaintiff's file and affirmed the opinion of Dr. Hinzman. (Tr. 62-63)  Dr. Delphia referenced medical notes from December 2013 and January 2014 documenting no difficulty ambulating and normal range of motion. (Tr. 62-63)

### D. Testimonial Evidence[2]

Starcher offered the following testimony at his ALJ hearing:

- Plaintiff's date of birth is May 17, 1964 and he was 51 years old at the time of the hearing.(Tr. 33)

- Plaintiff did not complete high school or obtain a GED. (Tr. 33)

- Plaintiff lived in a house in Akron with his wife and five grandchildren.  They had custody of the five grandchildren, ages 2, 4, 6, 7, and 10. (Tr. 34, 39)  Plaintiff helped with the grandchildren by diapering the two year old and preparing his bottle. (Tr. 40)

- Plaintiff is 5'8" or 5'9" and weighed 160 pounds at the time of the hearing. (Tr. 33)

- Plaintiff did not have a valid driver's license. (Tr. 33)

- Plaintiff had pain in his lower back and in his right knee down to his ankle. (Tr. 35)

- Plaintiff was not taking any prescriptions at the time of the hearing because he could not afford medical treatment. (Tr. 35)  His pain had worsened since he stopped taking medication. (Tr. 35)  He took hot showers and baths to ease his pain.  (Tr. 35)  He also used a TENS unit about three times per week. (Tr. 36)

- Plaintiff testified that he could sit for about 15 to 20 minutes before he would start to have sharp pains in his back.  He would then stand up and walk for a little bit. (Tr. 36)  He believed he would be able to stand for about 20 minutes to a half hour. (Tr. 42)  After that, his leg would "give out." (Tr. 42)

- Plaintiff's pain interfered with his sleep.  He normally slept around four hours per night. He also took naps, but not every day. (Tr. 37-38)

---

[2] Vocational Expert Theresa Wolford also testified at the hearing.  Because plaintiff's challenge to the ALJ's decision does not take issue with the findings, opinions or testimony of the VE, it is not necessary to summarize that evidence.

6

- Plaintiff broke some vertebrae in his back in 1999. He had neck surgery in 2002. He also had knee surgery. After each surgery, he returned to work. (Tr. 38-39) However, he was now unable to work because he had slowed down too much and was not able to keep up with the job requirements. (Tr. 39) Plaintiff believed his biggest obstacle to returning to work would be the sitting and standing requirements. (Tr. 41)

- Plaintiff previously worked for a company called Akron Plating. He had worked there for about 18 years. (Tr. 40) More recently, he had tried to help his brother with roofing jobs but was unable to go up and down the ladders and mostly cleaned up on the ground. (Tr. 41)

**IV.    Standard for Disability**

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[3]….
> 
> 42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

---

[3] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

7

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.R.F. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

**V.     The ALJ's Decision**

The ALJ's September 4, 2015 decision made these findings:

1. Mr. Starcher met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 13)

2. Starcher had not engaged in substantial gainful activity since May 16, 2014, the alleged onset date. (Tr. 13)

3. Starcher had the following severe impairments: degenerative disc disease. (Tr. 13)

4. Starcher did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 14)

5. Starcher had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he could not climb ladders, ropes or scaffolds. He could occasionally kneel, crawl, crouch and stoop. He was

8

      required to avoid workplace hazards such as unprotected heights or dangerous moving machinery. (Tr. 14)

6. Mr. Starcher was unable to perform any past relevant work. (Tr. 16)

7. He was born on May 17, 1964. On the alleged onset date, he was 48 years old, which is defined as a younger individual age 18-49. (Tr. 16)

8. Starcher had a limited education and was able to communicate in English. (Tr. 17)

9. Transferability of job skills was not material because plaintiff was not disabled whether or not he had transferable job skills. (Tr. 17)

10. Considering Starcher's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. (Tr. 17)

Based on the foregoing, the ALJ determined that Mr. Starcher had not been under a disability from May 16, 2014 through September 4, 2015, the date of the ALJ's decision. (Tr. 18)

## VI. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

9

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

The court must also determine whether proper legal standards were applied. If not, reversal is required unless the legal error is harmless. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was

10

discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

### B. ALJ's Assessment of Opinion of Consultative Examiner, Dr. Cola

Plaintiff argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence because he improperly evaluated the opinion of the consultative physician, Dr. Kristin Cola.  Dr. Cola's opinion supported a finding that plaintiff was only capable of performing sedentary work, not light work as determined by the ALJ.  The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  In determining disability, an ALJ evaluates the opinions of medical sources in accordance with the nature of the work performed by the source. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013).

The Code of Federal Regulations describes how medical opinions must be weighed:

(c)  How we weigh medical opinions.  Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

>    (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
>    (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

> inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> . . .
>
> 20 CFR § 416.927(c). See also 20 CFR § 404.1527(c).

Dr. Cola examined plaintiff in August 2015, over a year after he stopped treating at Summit Pain Specialists, Inc. (Tr. 339-341, 343-355) In considering her opinion, the ALJ stated:

> Dr. Cola conducted testing, and found that the claimant had an unsteady gait, a positive straight leg raise on the right, and slightly reduced flexion and extension in his dorsolumbar spine. Dr. Cola opined that the claimant "would be able to perform less than light duty." She elaborated that he could lift and carry less than 10 pounds, and would be able to sit for "very short periods of time." I give little weight to this opinion since it is contrary to the balance of the medical evidence and the claimant's reported activities of daily living. Office notes from only a few months prior to this exam showed that the claimant had no difficulty ambulating, no acute pain, no spinal deformity, no radicular pain, and no limitation in his range of motion. He reported in the past year that he cares for his five young grandchildren and helps his wife take care of the cats. He testified that he had worked for about three months as a roofer, cleaning up materials on the ground. Moreover, at the time of the hearing, the claimant was no longer taking any pain medication, indicating that his pain is not as severe as alleged. Thus, I give little weight to Dr. Cola's opinion, as it is clearly anomalous to the remainder of the record.

(Tr. 16) (internal citations omitted)

The ALJ assigned "some weight" to the state reviewing physicians' opinions that plaintiff was capable of performing work at the light exertional level; could frequently climb ramps and stairs; could never climb ladders, ropes, or scaffolds; and could frequently stop and kneel. (Tr. 16)  He assigned weight to their opinions because he thought that their opinions were partially supported by the objective medical evidence and history of conservative treatment, but thought that the record supported greater limitations as determined in his residual functional capacity. (Tr. 16)

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.  *See, e.g.*, 20 CFR § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the medical opinion and the reasons for that weight. SSR 96-2p, 1996 SSR LEXIS 9.

The regulations provide that the ALJ is to evaluate every medical opinion in the record, and, unless giving a treating physician's opinion controlling weight, must consider all of the listed factors when deciding the weight to accord medical opinions. 20 CFR § 416.927(d); 20 CFR § 404.1527(d).  In this case, there was no opinion from a treating physician in the record.  Dr. Cola was the only physician who examined plaintiff and provided an opinion.  Her opinion that plaintiff could not perform light work is supported by specific findings from her physical examination.  She noted that he could not touch his toes; was unable to get onto the examination table; had an antalgic gait, etc. (Tr. 344)

The ALJ was not required to assign controlling weight to the opinion of Dr. Cola in this case, or even to provide good reasons for failing to do so.  *See Smith v. Comm'r,* 482 F.3d 873,

13

876 (6th Cir. 2007).  But the regulations also state that the ALJ must consider certain factors in assessing the weight to be given to opinion evidence. 20 CFR § 416.927(c).  These factors include that "generally more weight is given to the opinion of a source who has examined you than to the opinion of a source who has not examined you" and that the ALJ will consider the supportability of the opinion.

It does not appear that the ALJ followed the agency's regulations when he assessed the weight to be given to the opinion of Dr. Cola.  The ALJ did discuss the supportability of Dr. Cola's opinion, but his discussion contained inaccuracies.  For example, the ALJ indicated that offices notes from "only a few months" prior to Dr. Cola's exam showed that the claimant had no difficulty ambulating.  As the Commissioner concedes, more than a "few months" had passed between the time of Dr. Cola's evaluation and Starcher's last treatment at Summit Pain Specialists in May 2014.  Dr. Cola examined plaintiff in August 2015.  Secondly, many of the office notes from Summit Pain Specialists contain the same paragraph under a section entitled "General Exam."  In each record, the following paragraph is repeated:

> Appearance: in no acute pain.  Nutritional status: well-nourished. Orientation: alert and oriented yes.  Ambulation: ambulating without difficulty.  Affect is normal/Head is normocephalic.

(Tr. 225, 222, 219, 215, 211, 207, 204, 235, 201, 323, 330, 341)  However, when this paragraph is compared with more specific notes from the office visits, it is questionable whether this repeated paragraph is fully accurate.  Plaintiff complained of increasing pain.  Office notes from February 2013 state that plaintiff had been fired for inability to perform his duties at work; he could not find a job due to restrictions with pain." (Tr. 214)  Office notes from December 2013 state that plaintiff was trying to stay active but that pain prevented activity. (Tr. 234)  Office notes from his last visit in May 2014 indicate that the treatment plan was not controlling the pain

and that his pain was "often prohibitive." Dr. Cola's opinion was not inconsistent with these notes. By simply stating that the office notes showed that plaintiff was not in acute pain and was not having any troubles ambulating, etc., the ALJ failed to accurately describe the content of the specific office notes or to fully consider plaintiff's worsening condition. Moreover, the office notes referenced by the ALJ were well over a year old by the time that Dr. Cola examined plaintiff.

The ALJ also concluded that Starcher's activities of daily living contradicted Dr. Cola's opinions. Specifically, the ALJ stated that plaintiff was caring for his five young grandchildren and that he had worked as a roofer, cleaning materials off the ground. Again, this characterization of the plaintiff's daily activities appears to overstate the evidence in the record. Plaintiff did testify that he helped with his grandchildren. (Tr. 40) The medical records also contain notes regarding "helping" with his grandchildren. (Tr. 200, 322) However, very few details were provided regarding the physical effort that was required to help with the grandchildren. Plaintiff testified that he would take care of the two year old a little bit; diapered him; got him a bottle. (Tr. 40) But the ALJ did not ask whether plaintiff was required to or capable of lifting any of his grandchildren. The ALJ did not ask whether watching after his grandchildren required plaintiff to be on his feet for any amount of time. (Tr. 40) Thus, it is unclear whether Dr. Cola's opinion was actually contradicted the fact that plaintiff "helped with his grandchildren." Very little information is known as to what "helping with grandchildren" actually entailed.

Similarly, plaintiff's testimony that he helped his brother with some roofing jobs was vague:

    A.  I tried doing a little bit of roofing, but that didn't work.

15

    Q. How long did you do that?

    A. Just a few months.

    Q. And why did you stop?

    A. I couldn't go up and down the ladders, and mostly what I done was just the clean up on the ground.

(Tr. 40) This is the entire testimony supporting the ALJ's statement that plaintiff "worked as a roofer." The ALJ didn't ask how much weight the plaintiff was required to lift; how many jobs or days plaintiff did this; or even how many months he tried to do this job. (Tr. 41) There was no explanation of the standing or sitting requirements of the job. Notably, it appears that plaintiff's attempt to help as a roofer occurred in or before June of 2013, more than two years before Dr. Cola's examination. (Tr. 205) Thus, it is impossible to determine from the record evidence whether Dr. Cola's opinion was actually contradicted by the earlier work attempt or plaintiff's activities of daily living as determined by the ALJ.

    Finally, the ALJ noted that plaintiff was not using pain medication at the time of the hearing and that this showed that the pain was not as severe as alleged. (Tr. 16) The undersigned disagrees with this part of the ALJ's analysis. Plaintiff had a history of broken vertebrae and back surgery with increasing pain. The medical records evidence years of treatment with a facility that provided pain management. The final office note from the facility indicates that the medication regimen was not appropriately controlling plaintiff's pain. (Tr. 340) Plaintiff testified that he was not able to afford pain medication. (Tr. 34) His only source of income was from taking care of his five grandchildren. (Tr. 34) Thus, the fact that plaintiff was not taking pain medication did not necessarily establish that his pain was not severe. Nor did it contradict the opinion expressed by Dr. Cola that plaintiff was limited to work at the sedentary level. See *McKnight v. Sullivan,* 927 F.2d 241, 242 (6th Cir. 1990).

16

There may have been legitimate reasons to limit or reject the opinion of Dr. Cola in this case, and the ALJ was not required to provide good reasons for failing to credit her opinion. However, the ALJ's decision makes it appear that he failed to properly assess Dr. Cola's opinion. He suggests that her opinion contradicted medical notes from only a "few months ago," and that it was contradicted by plaintiff's activities of daily living. In fact, the ALJ's decision contains inaccuracies and the "contradictions" he found are not supported by substantial evidence in the record. The undersigned recommends that this case be remanded so that the ALJ can properly assess the weight to be given to the opinion of Dr. Cola.

### 2. Residual Functional Capacity

The ALJ, not a physician, is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole. 42 U.S.C.A. § 423(d)(5)(B); 20 C.F.R. § 416.946(c). Pursuant to the regulations, the ALJ must evaluate several factors in determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. See *Henderson v. Comm'r,* 2010 U.S. Dist. LEXIS 18644 (N. Dist., October 13, 2009) citing, *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 633 (6th Cir. 2004); SSR 96-5p, 1996 SSR LEXIS 2, SSR 96-8p, 1996 SSR LEXIS 5. The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 416.927(e)(2). Although it is the Commissioner who is responsible for determining plaintiff's residual functional capacity, he is required to follow the regulations in considering the medical evidence, including the medical opinions in the record. In this case, the ALJ did not follow the regulations in evaluating the opinion of Dr. Cola, the examining physician. He assigned little weight to her opinion and more weight to the reviewing physicians. Even more significant is the fact that the ALJ's decision contains inaccuracies regarding the supportability of Dr. Cola's opinion and the consistency of her opinions with the overall medical

17

record. Dr. Cola opined that plaintiff was unable to perform work at the light exertional level. If the ALJ had properly assessed her opinion, plaintiff's residual functional capacity may have been limited to work at the sedentary level. This would have required a finding of disability pursuant to the Medical Vocational Guidelines. (Tr. 45) This case should be remanded so that the ALJ can properly assess the weight to be given to the opinion of the examining physician, Dr. Cola. This, in turn, may require a reexamination of plaintiff's residual functional capacity.

### VII. Recommendation

The court should find the decision of the Commissioner was not supported by substantial evidence. I recommend that the final decision of the Commissioner be VACATED and that the case be REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

Dated: June 2, 2017

Thomas M. Parker
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, **638 F.2d 947 (6th Cir. 1981)**. See also *Thomas v. Arn,* **474 U.S. 140 (1985)**, reh'g denied, **474 U.S. 1111 (1986)**.